**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Laura Ann Davis, | No. CV-20-01507-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Laura Ann Davis's application for supplemental security income by the Social Security Administration ("SSA") under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), Defendant SSA Commissioner's Response Brief (Doc. 23, "Def. Br."), and Plaintiff's Reply (Doc. 27, "Reply"). The Court has reviewed the briefs and Administrative Record (Docs. 13-2 through 13-14, "R.") and remands Plaintiff's case for further proceedings.

I.     **Background**

Plaintiff filed her application for supplemental security income on July 29, 2016, alleging disability beginning on April 1, 2016. (R. 20.) Plaintiff's claim was denied initially on November 17, 2016, and upon reconsideration on February 22, 2017. (*Id.*) On March 13, 2019, Plaintiff appeared before the ALJ for a hearing on her claim, and on April 17, 2019, the ALJ denied Plaintiff's claim. (*Id.* at 17, 20.) The Appeals Council later denied Plaintiff's request for review. (*Id.* at 7.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: degenerative disc disease, chronic kidney disease, diabetes mellitus, mild obesity, and carpal tunnel syndrome. (*Id.* at 24.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from July 29, 2016 through the date of the decision. (*Id.* at 36.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (*Id.* at 26.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff had the RFC to:

> [p]erform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, crouch, kneel, and crawl. She can frequently handle and finger bilaterally with the upper extremities. She can have occasional exposure to non-weather related extreme cold and heat, excessive vibration, dangerous machinery with moving, mechanical parts, and unprotected heights.

(*Id.* at 28.) Accordingly, although the ALJ found that Plaintiff was "unable to perform any past relevant work," the ALJ still found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.* at 34-35.) Considering testimony from the vocational expert, the ALJ found that Plaintiff was capable of performing work as a "cashier," "housekeeper/maid," or "agricultural produce sorter." (*Id.* at 36.)

II. **Legal Standard**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*,

495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.*  Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a).  The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity.   20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii).  At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404.  20 C.F.R. § 404.1520(a)(4)(iii).  If so, the claimant is automatically found to be disabled.  *Id.*  At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work.   20 C.F.R. § 404.1520(a)(4)(iv).  If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience.   20 C.F.R. § 404.1520(a)(4)(v).  If not, the claimant is disabled.  *Id.*

III.   **Analysis**

Plaintiff's opening brief raises two arguments.  First, Plaintiff argues the ALJ erred by rejecting Dr. Doust's assessment of her limitations.  (Pl. Br. at 12-18.)  Second, Plaintiff argues the ALJ erred by rejecting her symptom testimony.  (*Id.* at 18-23.)

A.   The ALJ erred when rejecting the opinion of Dr. Doust

Dr. Doust is Plaintiff's treating physician.  Ordinarily, more weight is ascribed to the opinion of a treating source than to the opinions of physicians who do not treat the claimant.[1]  *See, e.g.*, *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Thomas*, 278 F.3d at 957 (cleaned up).  But "[t]he ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

In May 2016, Dr. Doust diagnosed Plaintiff with lumbar radiculopathy, sacroiliitis, and hip pain.  (R. 327-28.)  In August 2017, based on Plaintiff's lumbar radiculopathy, lumbar spondylosis, and left hip pain, Dr. Doust opined that Plaintiff had an impairment that precludes an eight-hour workday.  (*Id.* at 883.)  Dr. Doust opined that Plaintiff would be limited to sitting, standing, or walking for fewer than two hours in an eight-hour workday, with the need to rest and change positions every 45-60 minutes, and would miss six or more days of work per month.  (*Id.* at 883-84.)  Dr. Doust indicated that his opined-to limitations "result[ed] from objective, clinical, or diagnostic findings which have been documented . . . in the patient's medical records."  (*Id.* at 884.)

The ALJ gave Dr. Doust's opinion "little weight."  (*Id.* at 33.)  The ALJ's rejection was based on two reasons: first, Dr. Doust's proposed limitations "do not appear consistent

---

[1]    "[T]he law in the Ninth Circuit is that, although the ALJ must consider all medical opinion evidence, there is a hierarchy among the sources of medical opinions.  Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians." *Latahotchee v. Comm'r of Soc. Sec. Admin.*, 2021 WL 267909, *4 (D. Ariz.) (cleaned up).

with medical records and clinical findings, given the extreme limitations that Dr. Doust provided"; and second, Dr. Doust "did not provide any significant support for his conclusions, merely checking boxes on pre-prepared forms and relying primarily on the claimant's subjective symptom reports rather than objective findings showing generally good strength and gait." (*Id.* at 33-34.)

Plaintiff challenges the sufficiency of the ALJ's explanation for rejecting Dr. Doust's opinion. (Pl. Br. at 12-18.) First, Plaintiff argues that the ALJ did not "specify what in the cited medical records was inconsistent with which of Dr. Doust's assessed limitations. . . . Without more, a reviewing court cannot discern what within the cited records the ALJ believed invalidated Dr. Doust's assessments." (*Id.* at 14.) Second, Plaintiff argues that "Dr. Doust did not need to provide additional support on the assessments for the assessment to be considered valid." (*Id.* at 15.) Plaintiff asserts that "an ALJ is not free to reject a treating source assessment" because "a form itself does not contain explanations," and "there is no basis for the implication that Dr. Doust set aside his professional judgment in order to rely solely on [Plaintiff's] subjective complaints to complete the assessment." (*Id.* at 15-16.)[2]

The Commissioner responds that "inconsistencies with the overall record or with a physician's own notes are a valid basis to reject a medical opinion." (Def. Br. at 10.) The Commissioner also disputes that the ALJ rejected Dr. Doust's opinion "solely" on the basis that Dr. Doust "submitted his opinions on a pre-prepared check-the-box form and provided little, if any support for his opinions." (*Id.*) The Commissioner argues that the ALJ provided two "specific and legitimate" reasons for rejecting Dr. Doust's opinions: first,

---

[2]     Plaintiff also appears to identify reasons why the ALJ should not have credited the opinion of a state agency non-examiner. (Pl. Br. at 16-18.) The ALJ did not suggest that she was rejecting Dr. Doust's opinion because it was contradicted by the opinion of a non-examining source, and even if she had, "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), as amended (Apr. 9, 1996). At any rate, because the Court agrees that the ALJ did not provide legally sufficient reasons for rejecting the opinion of Dr. Doust, and remands to the ALJ for further proceedings on that basis, the Court need not address any challenge to the ALJ's assessment of the state agency non-examiner's opinion.

"inconsistency between the extreme limitations and the medical records and clinical findings," and second, "Dr. Doust's failure to support his opinion, [which] contrasted with objective findings including good strength and gait." (*Id.* at 11.)

In reply, Plaintiff contends that "[t]he Commissioner appears to concede error in the ALJ's rationale that Dr. Doust's assessments could be rejected because they were furnished by way of a questionnaire." (Reply at 9.)  Plaintiff also argues that the ALJ's "only [other] rationale" regarding the alleged inconsistency between Dr. Doust's opinion and "medical records and clinical findings," which was that Plaintiff had "generally good strength and gait," is insufficient for the reasons stated in Plaintiff's opening brief. (*Id.* at 10.)

The ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Doust's opinion.  The ALJ's first proffered rationale was that Dr. Doust's opinion was inconsistent with other medical evidence in the record. Such a conflict is, in general, a specific and legitimate reason for rejecting a treating physician's opinion. *See, e.g.*, *Orn*, 495 F.3d at 633.  However, the ALJ's reasoning here was not supported by substantial evidence.

In support of the assertion that Dr. Doust's limitations were contradicted by the record, the ALJ cited Exhibits 8F (R. 492-94); 9F at 10, 15-16 (R. 505, 509-10); 10F at 3 (R. 642); 17F at 7-8, 12, 39 (R. 1196-97, 1201, 1228); 19F at 3, 17, 21 (R. 1249, 1263, 1267); and 20F at 32 (R. 1307), all of which were described as findings of "good strength and gait." (R. 34.)  However, without further explanation from the ALJ, the Court cannot conclude that these exhibits constitute substantial evidence in support of a finding of contradiction.  First, even if each exhibit did unambiguously reflect good strength and gait, those findings are not obviously responsive to Dr. Doust's proposed limitations.  The form setting forth Dr. Doust's assessments did not express any opinion as to the quality of Plaintiff's strength and gait—it simply opined on her ability to sit, stand, and walk for an entire eight-hour workday, as well as her ability to perform certain activities and the presence of other symptoms. (R. 883-84.)  The ALJ did not attempt to explain why general observations of *strength* conflict with Dr. Doust's limitations, which are based on avoiding

incapacitating *pain*.  Similarly, clinical observations that Plaintiff walks with normal gait during an examination (presumably for short periods of time, *e.g.*, when walking from reception to the physician's office) do not facially contradict Dr. Doust's limitations, which allow Plaintiff to walk for up to an hour at a time.  Although the Court could draw "reasonable inferences . . . from the ALJ's summary of the evidence," any attempts to "shore up the ALJ's decision, while understandable, are unavailing." *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020).

Second, although the ALJ characterized the cited exhibits as showing "good strength and gait," the accuracy of this characterization is not apparent.  For example, Exhibit 17F and 19F mix findings of normal gait and/or strength (R. 1196-97, 1249) with findings of *antalgic* gait[3] (*id.* at 1228, 1267), bilateral tenderness in the lumbar spine (*id.* at 1228, 1249), limited flexion/extension (*id.* at 1228), pain with lumbar facet loading maneuver (*id.*), and positive findings from the straight leg test[4] (*id.* at 1201).  The ALJ made no effort to explain "why the abnormal findings do not support Plaintiff's [position] or why the normal findings should not be given more weight than the abnormal findings." *Curtis v. Comm'r. of Soc. Sec. Admin.*, 2018 WL 6418486, *7 (D. Ariz. 2018).  Although the ALJ may very well be able to explain, on remand, why Dr. Doust's opinion is not worthy of credence, the inconsistency-with-medical-records rationale provided in the underlying decision was legally insufficient under Ninth Circuit law.

This leaves the ALJ's other proffered rationale, which was that Dr. Doust "merely check[ed] boxes on pre-approved forms."  (R. 33-34.)  The Commissioner does not appear to argue that this rationale, alone, would justify the ALJ's rejection of Dr. Doust's opinion.  At any rate, Plaintiff is correct that this was not a legally sufficient basis.  *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) ("[T]he ALJ was not entitled to reject the

---

[3]     Antalgic gait is, colloquially, a limp.  Nadja Auerbach et al., *Antalgic Gait in Adults*, NCBI, https://www.ncbi.nlm.nih.gov/books/NBK559243/ (Sept. 29, 2021).

[4]     The straight leg raise test, also called the Lasegue test, aims to assess for lumbosacral nerve root irritation, *i.e.*, an underlying nerve root sensitivity in the lower back.     Gaston O. Camino Wilhuber et al., *Straight Leg Raise Test*, NCBI, https://www.ncbi.nlm.nih.gov/books/NBK539717/ (July 31, 2021).

responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers. . . . [T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of forms to assess the intensity, persistence, or limiting effects of impairments.") (citations omitted).

### B.   The ALJ did not err when rejecting Plaintiff's symptom testimony

Plaintiff testified that she "cannot work due to chronic pain and weakness that she reported prevents her from walking or sitting for prolonged periods or lifting objects. . . . She also testified that she needed to take breaks every five to ten minutes when doing household chores, and reported that she used a cane to help with balance.  [Plaintiff] indicated that . . . she became fatigued when her blood sugar got too high."  (R. 28 [ALJ's summary]; *id.* at 48-61 [Plaintiff's testimony].)

The ALJ discredited Plaintiff's testimony for four reasons.  First, the ALJ found that Plaintiff's "allegations of having extreme pain and weakness in her legs [are] not fully supported by the objective evidence," and in particular were contradicted by an "unremarkable" nerve conduction study that was "contrary to her reports of leg weakness and numbness and balance issues.  (*Id.* at 29.)  Second, the ALJ found that Plaintiff's objective and consultative physical examinations supported a light residual functional capacity rather than "claimant's reports of debilitating pain, numbness and balance issues." (*Id.* at 29-30.)  Third, the ALJ found that Plaintiff's "symptoms evidently resolved with routine and conservative care."  (*Id.* at 30.)  Fourth, the ALJ found that "information in the record . . . draws into question [Plaintiff's] alleged reliance on an assistive device."  (*Id.*)

Plaintiff argues that the ALJ's proffered reasons for discrediting her symptom testimony were legally insufficient.  (Pl. Br. at 18-23.)  As for the first rationale, Plaintiff argues that the mere fact her "nerve conduction study was normal does not mean [Plaintiff] was fabricating her reports of leg pain and weakness."  (*Id.* at 20.)  As for the second rationale, Plaintiff asserts that the ALJ's RFC analysis "illustrates the dangers of

administrative adjudicators providing opinions in place of medical opinion evidence" and is generally deficient.  (*Id.* at 20-21.)  As for the third rationale, Plaintiff contends that she "returned over and over to her primary care . . . office [and] agreed to undergo multiple treatment modalities . . . [but] these efforts have not been successful."  (*Id.* at 21-22.)  As for the fourth rationale, Plaintiff contends that "a cane need not be prescribed; anyone can buy a cane" and that "the ALJ's attempt to manufacture the impression that [Plaintiff] intended to dupe the agency by exaggerating her pain at state agency appointments fails in light of [her] treatment record as a whole."  (*Id.* at 20-22.)

The Commissioner responds, first, that the ALJ properly weighed Plaintiff's claims about the severity of her spinal impairment against contradictory lumbar spine MRI and nerve conduction studies.  (Def. Br. at 15.)  Second, the Commissioner argues that the ALJ "pointed to inconsistencies" in Plaintiff's behavior between treating and examining visits, which allowed the ALJ to conclude that Plaintiff's testimony was not persuasive.  (*Id.* at 17-18.)  Third, the Commissioner points to evidence supporting the ALJ's contention that Plaintiff's "symptoms were effectively managed with her treating regimen."  (*Id.* at 18.)  Fourth, the Commissioner contends that Plaintiff's use of a cane without a prescription, in light of clinical observations that Plaintiff could walk unassisted, could reasonably undermine her credibility.  (*Id.* at 16-17.)

Plaintiff replies by asserting that "the ALJ's most fundamental error" was that "[t]he ALJ did not identify any specific symptoms that the ALJ thought were not credible and then identify evidence in the record that would support that belief."  (Def. Br. at 11.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or other symptoms alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).  If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her

symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015.

Applying these standards, the Court finds no error. The ALJ explained that Plaintiff's complaints of "leg weakness and numbness and balance issues" were contradicted by "nerve conduction studies of the left lower extremity [which] appeared unremarkable, with no evidence of large fiber peripheral neuropathy or left lumbosacral radiculopathy." (*Id.* at 29.) Exhibit 3F, cited by the ALJ, reports an "unremarkable study providing no convincing electrophysiological evidence . . . to explain the patient's symptoms." (*Id.* at 306.)

Although Plaintiff identifies various reasons why a different factfinder might have been able to reconcile this evidence with her symptom testimony, the ALJ's finding of inconsistency was rational and, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Additionally, Plaintiff's contention that the ALJ "did not identify any specific symptoms that the ALJ thought were not credible" is simply untrue—as noted, the ALJ specifically identified Plaintiff's "reports of leg weakness and numbness and balance issues" (R. 29) as the symptom testimony that was contradicted by the nerve conduction studies.

Given these conclusions, it is unnecessary to resolve whether the ALJ's additional proffered reasons for discounting Plaintiff's symptom testimony were specific, clear and convincing and supported by substantial evidence. Even if not, substantial evidence supports the ALJ's ultimate conclusion. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, such is deemed harmless and does not warrant reversal.") (alterations in original) (internal quotation marks omitted). *See also Magnotti v. Comm'r of Soc. Sec. Admin.*, 2021 WL 4025959, * 4 (D. Ariz. 2021).

C.      The appropriate remedy is to remand Plaintiff's case for further proceedings

Plaintiff asks the Court to apply the credit-as-true rule, which would result in a remand of Plaintiff's case for repayment of benefits rather than for further proceedings. (Pl. Br. at 24.)

The credit-as-true rule determines whether a case should be remanded for benefits. *Garrison*, 759 F.3d at 1020.  It applies if each part of a three-part test is satisfied.  *Id.*  First, the record must have been fully developed and further administrative proceedings would serve no useful purpose.  *Id.*  Next, the ALJ must have failed to provide sufficient reasons for rejecting the claimant's testimony or medical opinions.  *Id.*  Finally, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled.  *Id.*  Even if all elements of the credit-as-true rule are met, the Court maintains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."  *Id.* at 1021.

In this case, the ordinary remand rule applies.  Further proceedings would be useful to enable to ALJ to address, in more detail, whether there is a valid basis for rejecting Dr. Doust's proposed limitations.  Additionally, the Court harbors serious doubt as to whether Plaintiff is, in fact, disabled.  Therefore, a remand for further proceedings is the proper remedy.

Accordingly,

**IT IS THEREFORE ORDERED** remanding this matter to the Social Security Administration for further proceedings consistent with the Order.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 24th day of February, 2022.

Dominic W. Lanza
United States District Judge